UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 cv 7828

| | |
|---|---|
| DAVID HELFENBEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTAIR NANOTECHNOLOGIES, INC., ALEXANDER LEE, RICHARD W. LEE, GUOHUA SUN, JAMES T. ZHAN, STEPHEN B. HUANG, PAULA CONROY, and KAREN WARNER,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>JUDGE TORRES<br><br>**DEMAND FOR JURY TRIAL**<br><br><br>SEP 23 2014<br>U.S.D.C. S.D.N.Y. |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff David Helfenbein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Altair Nanotechnologies, Inc., ("Altair" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Altair securities traded on the NASDAQ Capital Market ("NASDAQ") between May 15, 2013 and September 4, 2014, both dates inclusive (the "Class Period"). Plaintiff seeks to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Altair designs, manufactures and delivers energy storage systems for clean, efficient power and energy management. The Company purports to offer commercial solutions enabling the modernization of the electricity grid, utility-scale renewable power integration and applications supporting remote uninterruptible power supply requirements, military and transportation.

3. Altair is a Canadian corporation, with its principal assets and operations in the United States. Altair currently has one wholly owned subsidiary, Altair US Holdings, Inc., a Nevada corporation. Altair US Holdings, Inc. directly or indirectly wholly owns Altairnano, Inc., a Nevada corporation. Altairnano, Inc. directly wholly owns Altair Nanotechnologies (China) Co., Ltd., a Wholly Foreign Owned Enterprise ("WOFE") in China ("Altair China") and Altair China directly wholly owns Northern Altair Nanotechnologies Co., Ltd., a domestic company in China ("Northern Altair").

4. In 2012, the Company focused on the launch of operations in China. According to regulatory filings, the Company expects that over time a meaningful portion of sales, and eventually key portions of manufacturing, will originate from China. For this purpose, the Company formed Altair China, in China, which in turn formed a wholly owned subsidiary,

Northern Altair, which would serve as the prospective manufacturing entity. Altair pursued an economic development deal in China, and in April 2012, it entered into an agreement with the cities of Wu'an and Handan, which are both located in Hebei Province in China. In 2013, the Company determined to significantly expand its operations in China and, as a result, by the end of 2013, the Company had become an entity operating primarily in China.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies, and internal controls over financial reporting. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was experiencing significant executive management and accounting level turnover in 2013 which led to a lack of segregation of duties throughout the Company and resulted in a lack of controls to perform a timely review of transactions at an appropriate level of precision; (2) the Company did not implement adequate procedures and controls over the 2013 year-end financial close and reporting process to ensure timely filings in compliance with its financial reporting requirements; (3) the Company did not implement adequate procedures and controls to appropriately evaluate routine and non-routine transactions, and as a result, did not detect the material misstatements that were identified by its auditor during its audit process; (4) the Company did not implement adequate procedures and controls to ensure accurate and timely communication with its subsidiaries in China; and as a result of the foregoing, (5) the Company did not implement adequate procedures and controls to ensure the completeness and accuracy of its consolidated financial statements and related subsequent events.

6. On September 4, 2014, the Company filed a Form 8-K with the SEC announcing that on August 28, 2014, Crowe Horwath LLP ("Crowe"), the independent registered public accounting firm of Altair, resigned as the Company's independent registered public accounting firm. According to the Form 8-K, Crowe's resignation letter to the Company's management and the Audit Committee of the Company's Board of Directors advised the Company that it was resigning due to its inability to complete the audit of the Company's financial statements for the year ended 2013 in part due its inability to perform sufficient procedures to determine the completeness of reporting of subsequent events transactions that may have occurred in China. Moreover, Crowe indicated that it was resigning in part due to the Company's material weakness relative to implementing controls and procedures to ensure accurate and timely communications between the Company's subsidiaries in China and its U.S.-based accounting team.

7. Immediately prior to its resignation, Crowe sent a letter to management and the Audit Committee of the Company's Board of Directors identifying the several material weaknesses, which the Company had not corrected. According to the September 4, 2014 Form 8-K, the letter to management and the Audit Committee of the Company's Board of Directors identified the following material weaknesses:

- The Company experienced significant executive management and accounting level turnover in 2013 which led to a lack of segregation of duties throughout the Company and resulted in a lack of controls to perform a timely review of transactions at an appropriate level of precision;

- The Company did not implement adequate procedures and controls over the 2013 year-end financial close and reporting process to ensure timely filings in compliance with its financial reporting requirements;

- The Company did not implement adequate procedures and controls to appropriately evaluate routine and non-routine transactions, and as a result, did not detect the material misstatements that were identified by Crowe during its audit process;

- The Company did not implement adequate procedures and controls to ensure accurate and timely communication with its subsidiaries in China, and as a result, led to material misstatements that were identified by Crowe during its audit process;

- The Company did not implement adequate procedures and controls to ensure the completeness and accuracy of its consolidated financial statements and related subsequent events.

8. As a result of this disclosure, NASDAQ halted Altair's shares during the trading day on September 4, 2014 at $4.30 per share.

9. Shares of Altair resumed trading on September 24, 2014, and as a result of this news, immediately fell $3.35 per share, a drop of nearly 78% from the halted price of $4.30 on September 4, 2014, to close at $0.95 on September 24, 2014.

10. Overall, in response to the disclosures during the Class Period, the Company's stock plummeted an aggregate 88%, from a closing of $7.99 on October 14, 2013 to a closing price of $0.95 on September 24, 2014.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

13. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

14. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

15. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16. Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, acquired Altair securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17. Defendant Altair develops, manufactures and sells nano lithium titanate batteries and energy storage systems. Altair shares of common stock are traded on the NASDAQ under the symbol "ALTI."

18. Defendant Alexander Lee ("A. Lee") served as the Chief Executive Officer ("CEO") for the Company until his resignation as CEO on August 26, 2013.

19. Defendant Richard W. Lee ("R. Lee") served as the CEO for the Company from his appointment on August 26, 2013 until his resignation as CEO on February 21, 2014.

20. Defendant Guohua Sun ("Sun") served as the Interim CEO for the Company from his appointment on March 18, 2014 until his resignation as Interim CEO on August 13, 2014.

21. Defendant James T. Zhan ("Zhan") served as the CEO for the Company from his appointment on August 15, 2014 through the end of the Class Period.

22. Defendant Stephen B. Huang ("Huang") served as the Chief Financial Officer ("CFO") for the Company until his resignation as CFO on September 26, 2013.

6

23. Defendant Paula Conroy ("Conroy") served as the CFO for the Company from her appointment on September 26, 2013 until her resignation as CFO on January 13, 2014.

24. Defendant Karen Warner ("Warner") served as the Interim CFO for the Company from her appointment on March 18, 2014 through the end of the Class Period.

25. Also on September 26, 2013, each of non-parties Liming (Albert) Zou, Victor Sze and Hong Guo resigned as directors of the Company. Mr. Zou also resigned as President of the Company and from positions with its subsidiaries. On the same date, the Board of Directors of the Company appointed Eqbal Al Yousuf, Yuhong Li, and Guohua (Andy) Wei as directors of the Company. Mr. Al Yousuf and Ms. Li were also appointed to the Audit Committee of the Board of Directors of the Company. Mr. Al Yousuf was appointed pursuant to a covenant with the Company permitting Al Yousuf LLC to nominate a single director, as long as it continues to hold at least 5% of the outstanding common shares of the Company; he replaced Victor Sze, who was the prior appointee.

26. The defendants referenced above in ¶¶ 18 – 24 are sometimes referred to herein as the "Individual Defendants."

27. Defendant Altair and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28. Altair develops, manufactures and sells nano lithium titanate batteries and energy storage systems. The Company's nano lithium titanate battery systems purport to offer higher power density, longer cycle life, rapid charge and discharge capabilities, a wider operating temperature range and higher levels of safety than conventional lithium-ion batteries.

29. According to the Company, large cities, counties and transit authorities are increasingly turning to electric and hybrid electric buses to reduce pollution and reliance on diesel fuel for their transportation systems, especially in markets like China where there are significant levels of pollution. As a result, the Company is attempting to establish nano lithium titanate batteries as the power source of choice in these emerging markets. Given the projected growth of electric buses in the Asia Pacific region, the Company views China as one of the largest market opportunities within the transportation segment.

30. In 2012, the Company determined to significantly expand its operations in China and, as a result, by the end of 2013, the Company had become an entity operating primarily in China.

### Materially False and Misleading Statements Issued During the Period

31. On May 15, 2013, the first day of the Class Period, the Company issued a press release and filed a Form 8-K with the SEC announcing operating and financial results for the first quarter ended March 31, 2013. Altair reported revenues of $1.9 million for the first quarter compared to $0.3 million for the same period in 2012. The gross loss was $0.3 million due to inventory cost adjustments and the launching of new electric grid products. Operating expenses were $3.2 million for the first quarter, a $1.6 million decrease from $4.8 million for the same period in 2012. Planned reductions were achieved and accounted for the decrease of $1.6 million in the research and development, sales and marketing, and general and administrative departments.

32. Moreover, defendant A. Lee stated the following in the May 15, 2013 press release pertaining to the Company's operations in China:

> "Our goal in 2012 was to advance our commercialization efforts, reduce cost and position the company for growth," stated Alexander Lee, Altair's Chief Executive Officer. "Thus far in 2013, we can tangibly point to our achievements in each of these areas. We delivered a number of systems to our customers, who are impressed

with our team and our products. We reduced our operating expenses this past quarter by 33% as compared to the same period last year. *Moreover, we achieved this milestone, while we were ramping up our China operations. We have approximately 30 employees in China, and have made significant progress on the construction of our new manufacturing and assembly facilities.* With respect to the critical issue of revenue, we recognized $1.9 million in revenue this quarter, and now have $7.1 million in deferred revenue. Lastly, when we add in the revenue that we expect to earn from our current customer base, which includes the Hawaii Natural Energy Institute, Proterra and the City of Wu'an, it quickly becomes clear why 2013 will be a pivotal year for Altair."

33. On May 15, 2013, the Company filed a Form 10-Q with the SEC which was signed by defendants A. Lee and Huang, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants A. Lee and Huang, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34. Moreover, the first quarter Form 10-Q contained the following language pertaining to the Company's expanding operations in China:

> In 2012, we formed Altair Nanotechnologies (China) Co., Ltd. ("Altair China") and Northern Altair Nanotechnologies Co., Ltd. ("Northern Altair") in order to aggregate key elements of our supply chain and expand into the Chinese market. We anticipate this expansion will allow us to participate in the fast-growing China market.

35. The Form 10-Q also stated the following regarding the Company's internal control over financial reporting:

**Controls and Procedures**

(a) Based on their evaluation as of March 31, 2013, which is the end of the period covered by this Quarterly Report on Form 10-Q, *our principal executive officer and principal financial officer have concluded that our disclosure controls and procedures (as defined in Rules 13a-15(e) or 15d-15(e) of the Exchange Act) are effective,* based upon an evaluation of those controls and procedures required by paragraph (b) of Rule 13a-15 or Rule 15d-15 of the Exchange.